**Marc K. Sellers, OSB #79107**
E-mail: msellers@schwabe.com
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981
Fax (503) 796-2900
Of Attorneys for Plaintiff

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **FOUNDATION OF HUMAN UNDERSTANDING**,<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES OF AMERICA**,<br><br>Defendant. | **No. 04-1441 T**<br>**The Honorable Emily C. Hewitt** |

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| CONCISE STATEMENT OF THE CASE | | 1 |
| SUCCINCT STATEMENT OF QUESTIONS INVOLVED | | 1 |
| ARGUMENT | | |
| | Statement of Plaintiff's Position | 2 |
| | Relief Requested | 2 |
| | Standard of Review | 2 |
| | Scope of Review | 3 |
| 1. | Plaintiff's Proposed Findings of Uncontroverted Fact | 4 |
| 2. | The Administrative Record | 4 |
| 3. | Materials in Addition to the Administrative Record | 4 |
| | Statement of Facts | 5 |
| | Statement of Law | 14 |
| 1. | The Associational Test | 16 |
| 2. | The Service's 14-Factor Test | 17 |
| Factor 1: | Distinct Legal Existence | 19 |
| Factor 2: | Recognized Creed and Form of Worship | 19 |
| Factor 3: | Definite and Distinct Ecclesiastical Government | 20 |
| Factor 4: | Formal Code of Doctrine and Discipline | 20 |
| Factor 5: | Distinct Religious History | 20 |
| Factor 6: | Membership Not Associated with any other Church or Denomination | 21 |
| Factor 7: | Organization of Ordained Ministers; and Factor 8: Ordained Ministers Selected After Completing Prescribed Studies | 21 |
| Factor 9: | Literature of Its Own | 23 |
| Factor 10: | Established Places of Worship | 23 |
| Factor 11: | Regular Congregations | 24 |
| Factor 12: | Regular Religious Services | 25 |
| Factor 13: | Sunday Schools for Religious Instruction of the Young | 26 |
| Factor 14: | Schools for the Preparation of Its Ministers | 26 |
| "Factor" 15: | Any other Facts and Circumstances | 26 |
| Summary | | 27 |
| 3. | The Service's New Criteria | 27 |



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

TAM Factor 1: The Service's conclusion that the Foundation no longer has the "minimum" for church status: "a body of believers or communicants that assembles regularly in order to worship." AR 8822. .......... 27

TAM Factor 2: The Service's conclusion that the Foundation does not have an established place of worship, and does not hold regular religious services. AR 8822.......... 28

TAM Factor 3: The Service's conclusion that the Foundation did not hold more than 10 weddings or ministerial events or sacerdotal functions during the years 1998-2000, and conclusion that the Foundation's activities in these areas are insufficient for church status. AR 8822. .......... 29

TAM Factor 4: The Service's conclusion that the Foundation holds only "sporadic" lectures of "less than 30 people" held at Tall Timber Ranch, which are not sufficient to satisfy the Service's prerequisites to "church" status. AR 8822.......... 29

TAM Factor 5: The Service's conclusion that Foundation staff conducted seven seminars per year which, again, is apparently not sufficient in the Service's view. AR 8822. .......... 30

TAM Factor 6: The Service's conclusion that the Foundation's principal expenditures are for broadcasting and publishing. AR 8822. .......... 30

TAM Factor 7: The Service conclusion that there was no evidence that, during 1998-2000, Plaintiff had an established membership not associated with any other church or denomination. AR 8823. .......... 33

TAM Factor 8: The Service's conclusion that although the radio ministry shows produced by the Foundation have "some religious content" and "seek to disseminate the Foundation's views and doctrines," "religious programming is not sufficient to constitute a church." AR 8823. .......... 34

TAM Factor 9: The Service's conclusion that the Foundation is "predominately a religious broadcaster" and not a church. AR 8823. .......... 34

CONCLUSION .......... 36



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*America Guidance Foundation, Inc., v. United States*,
490 F. Supp. 304 (D.C.D.C. 1980) ....................16, 17

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................... 3

*Animal Protection Institute, Inc. v. United States*,
78-2 U.S.T.C. ¶ 9709 (Ct. Cl. 1978).................... 3

*Church of Eternal Life v. Commissioner,*
86 T.C. 916 (1986).................... 16

*Church of Spiritual Technology v. United States*,
26 Cl. Ct. 713 (1992) .................... 16

*Church of the Visible Intelligence*,
4 Cl. Ct. 55 (1983) .................... 17

*Davis v. Comm'r,*
81 T.C. 806 (1983), *aff'd without published opinion* 767 F.2d 931 (9th Cir. 1985)......... 16

*De La Salle Institute v. United States*,
195 F. Supp. 891 (D.C.N.D. Cal. 1961)....................34, 35

*Everson v. Board Of Education*,
330 U.S. 1 (1947).................... 15

*First Church of In Theo v. Comm'r*,
T.C. Memo 1989-16.................... 17

*Foundation of Human Understanding v. Commissioner*,
88 T.C. 1341 (1987)....................passim

*Hancock Academy of Savannah, Inc. v. Commissioner*,
69 T.C. 488 (1977).................... 3

*Houston Lawyer Referral Service v. Commissioner*,
69 T.C. 570 (1978).................... 3

*Larson v. Valente*,
456 U.S. 228 (1982).................... 15



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

*Living Faith, Inc. v. Commissioner*,
540 F.2d 365 (7th Cir. 1991) ........ 17

*Lutheran Social Serv. v. U.S.*,
758 F. 2d 1283 (8th Cir. 1985), *rev'g and remanding* 583 F. Supp. 1298 (D. Minn. 1984) ........ 17

*Spiritual Outreach Society v. Comr.*,
927 F.2d 335 (8th Cir. 1991) ........ 17

*Synanon Church v. United States,*
557 F. Supp. 1329 (D.D.C. 1989) ........ 3

*Williams Home, Inc. v. U.S.*,
540 F. Supp. 310 (W.D. Va. 1982) ........ 17

**FEDERAL STATUTES**

26 U.S.C. § 501(a) ........ 1

26 U.S.C. § 501(c)(3) ........ 1, 13

26 U.S.C. § 509(a)(1) ........ 1, 2, 5, 6, 13

26 U.S.C. § 509(a)(2) ........ 5

26 U.S.C. § 170(b)(1)(A)(i) ........ 1, 2, 5, 6, 13, 15,16

26 U.S.C. § 513 ........ 35

26 U.S.C. § 7428 ........ 3

26 U.S.C. § 7428(a)(1) ........ 1

26 U.S.C. § 7611 ........ 12

RCFC 5.3(a) ........ 1

RCFC 56 ........ 1, 2, 4

RCFC 56(c) ........ 2

RCFC 56(e) ........ 3, 4



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

RCFC 56(h) ........................................................................................................ 4

Treas. Regs. § 1.513-1(a), (d)(1) ........................................................................................ 34

Treas. Reg. § 1.170A-9(a) ............................................................................................... 15

Treas. Regs. (26 C.F.R.) .................................................................................................. 14

**MISCELLANEOUS**

1st Corinthians 6:4 ........................................................................................................ 15

Acts 7:37; 19:32, 39 ....................................................................................................... 15

Alexandra Alter, *Inspired by Starbucks*, Wall St. J., June 13, 2008, at W1 ............................... 32

*American Tract Dictionary*, "church" (http://www.studylight.org) ........................................... 15

*Cambridge Advanced Learner's Dictionary (The)*,
"church" (http://dictionary.cambridge.org) ................................................................... 15

*Christianity Today*, available at
http://blog.christianitytoday.com/outofur/achieves/2006/05/specner_burke_o_l.html ..........32, 33

David Sarno, *Can You Believe GodTube.com*?, Oct. 21, 2007, available at
http://latimes.com/entertainment/news/newmedia/la-ca-webscout21Oct21,0,660332.story?la-home-entertrainment ......................................... 32

David Tascherne, *Caught in the Web?, Outreach Magazine*, Summer 2002, available at
www.outreachmagazine.com/library/features/02summerftrweb.asp ............................. 33

Elizabeth Berstein, *More Prayer, Less Hassle*, Wall St. J., June 27, 2003, at W1 ...................... 31

Ericka King, *Tax Exemptions and the Establishment Clause,* 49 Syracuse L. Rev. 971 (1999).. 18

Foundation Newsletter, *Insights*, available at
the Foundation's website: www.fhu.com .......................................................10, 11, 23

Heidi Campbell, *Exploring Religious Community Online* 54 (Peter Lang Publishing 2005) ...... 33

Heidi Campbell, *Religion Online: Finding Faith in the Internet* (Routledge Publishing 2004) . 33

Internal Revenue Manual 7(10)69, *Exempt Organizations Examination Guidelines Handbook*
321.3(3)(Apr. 5, 1982) ........................................................................................17, 18



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

Matthew 16:18 .......... 15

*Outreach Magazine*, available at http://www.outreachmagazine.com .......... 32

Reka Potgeiter Hoff, *The Financial Accountability of Churches for Federal Income Tax Purposes: Establishment or Free Exercise?*, 11 Va. Tax Rev. 71 (1991) .......... 18

Remarks of IRS Comm'r. Jerome Kurtz, PLI Seventh Biennial Conference on Tax Planning (1/9/78)m *reprinted in* FED Taxes (P-H) ¶ 54, 820 (1978) .......... 17

Roy Masters, *New Insights* .......... 10, 20, 23

Roy Masters, *Be Still and Know* .......... 20

"Technical Advice Memorandum," PLR 200437040, 2004 PLR LEXIS 612 .......... 1

Tony Morgan, 2008 *America's Most Innovative Churches, Outreach Magazine*, Jan. 2008, available at http://www.livinghopechurch.com/library/features/if08ftrmostinnovativechurches.asp. 32

Whelan, *"Church" in the Internal Revenue Code : The Definitional Problems,* 45 Fordham L. Rev. 885, 916-17 (1977) .......... 15

Winslow, 885-2nd TM., *Exempt Organizations - Declaratory Judgments*, § V.D.2 .......... 3



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

Pursuant to RCFC 56 and 5.3(a), Plaintiff hereby presents its Memorandum in Support of Its Motion for Summary Judgment, filed simultaneously herewith.

## CONCISE STATEMENT OF THE CASE

Plaintiff Foundation of Human Understanding[1] brings this action for Declaratory Judgment in response to the administrative determination of Defendant, through the Internal Revenue Service (the "Service"), that, Plaintiff is not a church for purposes of 26 U.S.C. §§ 509(a)(1) and 170(b)(1)(A)(i). Defendant's administrative determination, in the form of a "Technical Advice Memorandum," appears as PLR 200437040, at 2004 PLR LEXIS 612. A copy appears in the Administrative Record, and is hereinafter referred to as the "TAM." AR 8798-824.[2]

This case presents an actual controversy involving Plaintiff's continuing qualification as a "church," which is an organization described in 26 U.S.C. § 501(c)(3) and which is exempt from taxation under 26 U.S.C. § 501(a). 26 U.S.C. § 7428(a)(1). Plaintiff moves for summary judgment, holding that Plaintiff is, and continues to be, a "church" for federal income tax purposes pursuant to 26 U.S.C. §§ 509(a)(1) and 170(b)(1)(A)(i).

## SUCCINCT STATEMENT OF QUESTIONS INVOLVED

Whether, for tax years from and after December 31, 1997, Plaintiff is a church for federal income tax purposes pursuant to 26 U.S.C. §§ 509(a)(1) and 170(b)(1)(A)(i).

---

[1] Plaintiff is referred to herein as "Plaintiff" or the "Foundation."

[2] Citations to the Administrative Record in this case are designated "AR," followed by the page number of the document. AR 1 through 9263 are references to the administrative record; references to AR 10,000 through 14323 and 15000 to 15175 are to documents which, although not part of the Administrative Record, are admissible and subject to the Court's review as exhibits to the affidavit of Roy Masters, filed simultaneously with this Motion for Summary Judgment. The affidavit of Roy Masters is referred to herein as "Affidavit of Roy Masters."



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

## ARGUMENT

### Statement of Plaintiff's Position

The Foundation is a church within the meaning ascribed to that term not only by the population at large, but also as that term is defined for tax purposes. In 1987, the United States Tax Court (the "Tax Court") determined that the Foundation is a church. *Found. of Human Understanding v. Comm'r*, 88 T.C. 1341 (1987).[3] The Service acquiesced in that conclusion in 1988. AR 1859-60. None of the salient factors concerning the Foundation's church status, which were discussed by the Tax Court in its 1987 decision, have changed. The Foundation continues in operation and service in substantially the same fashion as it has for more than 25 years. Accordingly, the Foundation is, and continues to be, a church.

### Relief Requested

Plaintiff requests a Declaratory Judgment that it is, and remains, a church within the meaning ascribed to that term as it is used in 26 U.S.C. §§ 509(a)(1) and 170(b)(1)(A)(i). Pursuant to RCFC 56, and as previously discussed with the Court in conference, Plaintiff files its Motion for Summary Judgment as an appropriate mechanism for disposal of this action.

### Standard of Review

Summary Judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RCFC 56(c). Once the plaintiff establishes the absence of genuine factual issues and its

[3] A copy of the Tax Court's decision is located in the Administrative Record at AR 24-92 and AR 2018-86. In cases in which Plaintiff relies on facts found by the Tax Court, references are provided to the Tax Court's published decision, and not to the two copies located in the Administrative Record.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

entitlement to judgment as a matter of law, it is incumbent upon the defendant to "set forth specific facts showing that there is a genuine issue for trial." RCFC 56(e). That burden is not negligible, and "[i]f the evidence is merely colorable or is not significantly probative summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

**Scope of Review**

A full trial is available in exempt status revocation cases in the Court of Federal Claims.[4] The Tax Court has stated that:

> "[T]he focus of our inquiry in declaratory judgment actions under [26 U.S.C.] Section 7428 is whether the administrative determination of the Commissioner is correct. For this purpose, we assume that all facts contained in the administrative record are true. [Tax Court] Rule 217. The role of this Court in declaratory judgment actions is' to resolve disputes as to the legal issues raised by the [Commissioner of Internal Revenue's] denial of an exemption ruling on the basis of uninvestigated statements of facts submitted by the taxpayer in its ruling request and related papers.'" *Houston Lawyer Referral Service v. Comm'r*, 69 T.C. 570, 573 (1978). The burden of proof is on petitioner."

*Hancock Acad. of Savannah, Inc. v. Comm'r*, 69 T.C. 488, 492 (1977).

> "In many cases, the IRS's revocation of exempt status is based on the organization's activities in past years, even though these prohibited activities have been terminated. During the audit process, which involves specific prior years, the IRS ordinarily does not grant the organization an opportunity to preserve its recognition of exemption by demonstrating current compliance. Yet, when the audit is completed, it is the current exempt status of the organization that is revoked. In *Synanon Church v. United States*, 557 F. Supp. 1329 (D.D.C. 1983), the court stated that current qualification for exempt status can be examined in retroactive revocation cases only after the organization reapplies for such status. Despite this holding, however, consistent with the purpose of the declaratory judgment remedy, the courts should consider any evidence concerning current operations presented by the organization to the IRS and included in the administrative record, even though this evidence does not relate to the years under audit."

Winslow, 885-2nd TM., *Exempt Organizations – Declaratory Judgments*, § V.D.2.

---

[4] *Animal Protection Inst., Inc. v. United States*, 78-2 U.S.T.C. ¶ 9709 (Ct. Cl. 1978).



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

1. *Plaintiff's Proposed Findings of Uncontroverted Fact*

Plaintiff has filed its Proposed Findings of Uncontroverted Fact (RCFC 56(h)), containing detailed citations to the Administrative Record and testimonial evidence in support of each such fact. Pursuant to RCFC 56(e):

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Plaintiff respectfully submits that Defendant has no evidence contrary to the facts set forth in Plaintiff's Proposed Findings of Uncontroverted Fact, which may be included in the Court's review of this case as the facts, pursuant to Rule 56.

2. *The Administrative Record*

The Administrative Record includes all of the materials submitted by Plaintiff to Defendant during the course of the Service's church-tax examination of the Foundation. Plaintiff provided these documents, numbering thousands of pages, to the Service in response to approximately 100 "Information Document Requests" ("IDRs") issued by the Service.

3. *Materials in Addition to the Administrative Record*

Due to the way in which the Service conducted the Audit, posed its inquiries, and controlled the development of its own issues and arguments, a number of Plaintiff's documents and straight answers, although relevant to the determination of the issues in this case, were not requested by the Service and did not become a part of the Administrative Record.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

Simultaneously herewith Plaintiff has filed with the Court the Affidavit of Roy Masters in which additional items are submitted for the Court's review.[5]

**Statement of Facts**

Plaintiff is a California nonprofit corporation, incorporated May 27, 1963. AR 465. Plaintiff's original Articles of Incorporation stated that the purposes for which Plaintiff was formed were "the promulgation of the religious, charitable, scientific, literary and educational aspects of mind over matter and spiritual health known as psychocatalysis." On December 20, 1965, the Commissioner of Internal Revenue (the "Commissioner") recognized the Foundation's tax-exempt status in a determination letter that characterized the Foundation's purposes as religious and educational. AR 456.

On August 17, 1970, Plaintiff filed with the Service Form 4653, "Notification Concerning Foundation Status," in which it indicated that it was a nonprivate foundation because it was a church under 26 U.S.C. §§ 509(a)(1) and 170(b)(1)(A)(i), and "[a]n organization that normally receives no more than 1/3 of its support from gross investment income and more than 1/3 of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions * * *. Section 509(a)(2)." 88 T.C. at 1343.

On May 15, 1972, Plaintiff amended the purpose clause of its Articles of Incorporation to indicate that Plaintiff is a church. *Id.* at 1345. Plaintiff's Articles of Incorporation have been amended several times since, but have always stated that Plaintiff is a church. *See* AR 470-79.

In 1983 Defendant determined that Plaintiff was not a church. 88 T.C. at 1345. Thereupon, Plaintiff filed suit for declaratory judgment in the United States Tax Court, seeking a judicial determination of its church status. The Tax Court granted declaratory judgment to

---

[5] *See supra* note 2.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

Plaintiff. *Id*. at 1361. Subsequently, on October 22, 1987, the Service issued to the Foundation its Determination Letter, wherein it formally acquiesced in the Tax Court's determination that, for periods after February 23, 1982, the Foundation is a "church" under 26 U.S.C. §§ 509(a)(1) and 170(b)(1)(A)(1). AR 1859-60.

Since 1987, and consistently with its prior practices, the Foundation has continued to operate as a church. The Foundation's religious and sacerdotal ministry and activities are reflected in the Administrative Record, as follows:

The Foundation's creed and teachings are based upon Judeo-Christian beliefs and the doctrine and teachings of its founder, Roy Masters. That unique creed concentrates on meditative practices as taught by Roy Masters. *See* 88 T.C. at 1359. Mr. Masters is assisted by a number of Foundation ministers, the membership of which has varied over time, in delivering the Foundation's Christian message that "[m]an is a fallen being, and hence is subject to his emotions. Through meditation and faith in Christ, it is possible for man to gain control of his emotions, to become self-disciplined, and hence a disciple of Christ." 88 T.C. at 1342. In this regard, Roy Masters has developed a particular form of meditation that is used by his followers. "Although based on Judeo-Christian principles, the emphasis on emotional self-control through a specific type of meditation as the key to salvation 'sets Plaintiff apart from other recognized religions.'" 88 T.C. at 1359.

The Foundation's discipline and teachings include an understanding of the true relationship of men and women with God and with each other and their society. *See* AR 231. The Foundation teaches that individuals may overcome their own emotional impulses and societal influences, to take control of their lives through meditative practices and self-discipline. *Id*. Those who fail to do so are at risk of both consciously and unconsciously being controlled by



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

the forces of evil and society. *Id*. The Foundation's doctrine and discipline are set forth in detail in the writings of Roy Masters and other Foundation ministers, which are disseminated by the Foundation. *Id*. No changes have occurred in the Foundation's doctrine, creed, or form of worship since the time it became a church (*i.e*., prior to 1983). Affidavit of Roy Masters, ¶ 2. A more complete statement of the Foundation's doctrine and creed appears at various portions of the Administrative Record, including AR 7081-85.

The Foundation has a wide-spread congregation, consisting of individuals from across the country, around the world and a variety of walks of life. Affidavit of Roy Masters, ¶ 3. No formal requirements for membership exist, and members of the Foundation's congregation are not required to abandon or terminate relationships with any other churches. 88 T.C. 1359. AR 233. The congregation extends well beyond Roy Masters' family and community, not only across the United States but also into foreign countries, including the United Kingdom (Affidavit of Roy Masters, ¶ 3, AR 11213-29) and Tanzania (Affidavit of Roy Masters, ¶ 3, AR 10353-11169; 11246-49, 11256-65). In response to the Service's IDRs, approximately 150 congregants declared in writing their affiliation with the church as members. *See* AR 7355-473.

Since 1979, and continuously thereafter, the Foundation has conducted services and seminars, referred to as "meetings," on its property, the "Tall Timber Ranch," located outside of Selma, Oregon, which is near Grants Pass. Affidavit of Roy Masters, ¶ 4. During the tax years 1998 to 2000 the meetings were conducted less frequently, due principally to Roy Masters' health issues. Affidavit of Roy Masters, ¶ 7. A summary of the meetings conducted during these years, both at the Tall Timber Ranch and at other locations, appears at AR 7075 through 7076. In the years after 2000, the Foundation has increased the frequency of its meetings to occur weekly, on Sunday mornings. Affidavit of Roy Masters, ¶ 8. Meetings are conducted by



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

Foundation ministers, and are recorded for later broadcast on a nationwide network of more than 90 AM and FM radio stations and are also "streamed" for access and downloading on the Internet. AR 8549-52. A list of the radio stations as in effect during the years 1998 – 2000 appears at AR 8549-52. More recently, the number of stations carrying Foundation broadcasts has increased to approximately 130. Affidavit of Roy Masters, ¶ 14.

The Foundation's meetings are currently conducted principally by its founder, Roy Masters, and occasionally by other ministers, including members of the Masters family who have been ordained by the Foundation. Affidavit of Roy Masters, ¶ 10. During the tax years at issue, meetings were held at Tall Timber Ranch and at other facilities in Grants Pass and across the United States. AR 232. During these meetings Foundation ministers conduct personal counseling; instruction in meditation techniques and self-awareness; and otherwise present and discuss the unique doctrine and teachings of the Foundation. *Id*. A detailed summary of the activities and purposes of the Foundation was articulated by the Tax Court. 88 T.C. at 1347, 1359. Since the date of that decision the Foundation's religious services have continued in substantially the same format and function, although they have increased in frequency and are now convened weekly, on Sundays. Affidavit of Roy Masters, ¶ 8. As they have since the Foundation's beginning, the services continue to further the Foundation's church purpose (AR 470-79) by ministering to its adherents, spreading the Foundation's meditation technique, and ultimately improving the lives of the Foundation's followers by bringing them closer to God and ridding them of their illnesses (spiritually and physically) that may have been caused by circumstances of upbringing, addictions, or other societal influences. AR 229.

Ministers of the Foundation receive personal tutelage from Roy Masters, usually lasting from one to three years. 88 T.C. at 1359. AR 234. No formal school or degree is required;



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

however, a minister of the Foundation must be thoroughly familiar with its doctrine and able to apply its teachings in the individual lives of Foundation congregants in order to counsel, conduct seminars and meetings, and produce writings for dissemination. AR 234.

During the years 1998-2000, the Foundation added two ministers, Elizabeth Diane Linderman and Emmanuel McLittle. *See* AR 230. Mr. McLittle's ministry included counseling and a radio show during the period 1998 through 2003. He was ordained in 2001. AR 7804, 8083. From 1998 to 2003, Mr. McLittle conducted 1,178 spiritual counseling sessions with Foundation congregants. AR 8083. In addition, Mr. McLittle delivered the Foundation's ministry on its radio broadcasts as evidenced by at least 56 audiotapes in the Administrative Record. AR 8083, 8553. Prior to the tax years examined by the Service, 1998-2000, Arlyn Hahn and Robert McQuain were also ministers of the Foundation. AR 8084. They passed away before the tax years in question. *Id.*

In addition to conducting meetings, the Foundation's ordained ministers perform marriages, counseling, exorcisms, funerals and otherwise minister to Foundation congregants. AR 228. Over the years more than 110 marriages have been performed by Foundation ministers. AR 7076; Affidavit of Roy Masters, ¶ 34, AR 15000-15175. No baptisms have been performed because baptism is not required to be a follower of the Foundation's creed. AR 231.

Plaintiff's radio broadcasts are attended by a large number of individuals in locations throughout the United States and abroad. In its 1987 opinion, the Tax Court acknowledged that the Foundation's "radio broadcasts have the potential to reach 2 million people with a regular listening audience of 30,000." 88 T.C. at 1360. Today, the Foundation reaches far more listeners than it did at the time the Tax Court found it to be a church. Affidavit of Roy Masters, ¶ 13. The Foundation has received several thousand letters from members attesting to their faith



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

and to the fact that the Foundation is their church. Affidavit of Roy Masters, ¶ 22. *See* AR 10354-11169.

Plaintiff's congregation includes a large number of incarcerated prisoners who are not able to attend church in a traditional setting, yet can attend their church by listening to Plaintiff's radio broadcasts. AR 8786-87. The Foundation has received thousands of letters from prisoners requesting Foundation materials, as well as testimonial letters from thousands of such incarcerated congregants, attesting to the fact that the Foundation is their church and that they benefit spiritually from the Foundation's radio ministry. AR 8787; Affidavit of Roy Masters, AR 10003-352, 13492-696. Plaintiff's radio messages are also recorded and are available for listening at a time of the listeners' convenience, on the Foundation's Web site, www.fhu.com. *See* AR 236. The Web site also contains information about services available through the Foundation, including upcoming seminars and activities at Tall Timber Ranch. AR 229.

The Foundation produces and disseminates its church newsletter, titled *New Insights*, which is published monthly and contains articles and information pertaining to the Foundation's doctrine and philosophies. Sample editions of *New Insights* appear in the Administrative Record, at AR 258-69; AR 1443-1 to AR 1491; *see also* Affidavit of Roy Masters, ¶ 44, AR 11243-11332.

The *New Insights* publication, together with Plaintiff's radio messages and Web site, alert congregants to a variety of other Foundation publications, available in print and over the Internet, dealing with topics ranging from traditional Christian message content to spiritual advice concerning common personal problems, and meditative techniques to deal with crisis and healing. Affidavit of Roy Masters, ¶ 25. A list of some of the publications available during the 1998 through 2000 years appears at AR 7080-81. An updated list, including publications



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

available presently, appears on the Foundation's Web site, www.fhu.com. In instances in which people cannot afford the price of a publication, the publication is generally furnished by the Foundation at no charge. Affidavit of Roy Masters, ¶ 28. Foundation records include requests for copies of Plaintiff's publications from thousands of incarcerated persons. AR 8787.

In approximately 1985, the Foundation established a school for the religious, moral, and secular training of children, known as Brighton Academy and located in Grants Pass, Oregon. AR 233, 7079. The curriculum was established, the facility located and purchased, teachers obtained and the school staffed by administrators and teachers who are followers or adherents of the Foundation. AR 233, 7760. Brighton Academy has always been open to the public. AR 223, 7760.

In order to facilitate its own fund-raising mechanisms, Brighton Academy incorporated itself in 1991 but continued to operate at the facility owned by the Foundation. AR 1849, 7979. Roy Masters, Brighton Academy's founder (AR 7167-68), served on Brighton Academy's board and also chaired its steering committee so that the school's values reflected the Foundation's Judeo-Christian world view. *See* AR 7261-73. A list of Brighton Academy's other board members and their qualifications appears at AR 7167-68.

Since 1991, the majority of Brighton Academy's board of directors has been adherents to the Foundation's teachings at the time they served on the board. Affidavit of Roy Masters, ¶ 31, AR 11209. Also since 1985 and then from 1991 to the present, a majority of Brighton Academy's parents have adhered to the Foundation's philosophy and teachings with regard to the Foundation's Judeo-Christian belief systems. AR 7079-80, 7760-7761. During the years 1998-2000, student enrollment was from kindergarten through twelfth grade and averaged approximately 140 students. AR 233; 7274-85. Apart from the Brighton Academy, the



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

Foundation does not currently conduct "Sunday school" services for the religious training of the young.

Ministers of the Foundation continue such activities as holding worship services, performing marriages, conducting seminars, performing ordinances such as exorcisms, and meeting with people on an individual counseling basis to offer spiritual counseling. Affidavit of Roy Masters, ¶ 34. The Foundation has continued to produce literature for guidance and instruction of its followers and in all respects continues to act as the center of the religious lives of its congregation in Grants Pass, Oregon, as well as thousands of people across the United States and worldwide. Affidavit of Roy Masters, ¶ 24. In addition to its services at Tall Timber Ranch, during the years at issue the Foundation held seminars (services) in Boston, Los Angeles, Philadelphia, and San Francisco. AR 7076.

In addition to its radio ministry, the Foundation maintains a relationship with independent foreign ministries, who are inspired by, and who base their teachings upon, the teachings and ministry of the Foundation. Affidavit of Roy Masters, ¶ 36-37, AR 11213-29; 11246-49; 11256-65. In particular, there are independent, yet cooperative, ministries in the United Kingdom and in Tanzania. Evidence of their affiliations, their purposes and ministries, and of the inspiration they have found in the Foundation's religious messages and ministry, appears at in the record. *Id.*

On or about October 16, 2001, the Service commenced its audit of the Foundation's tax status and related issues, for the tax years ended December 31, 1998, 1999, and 2000, pursuant to 26 U.S.C. § 7611 (the "Audit"). AR 1. The Audit was conducted almost exclusively in the form of IDRs in which the Service would request documents, information, and responses to particular questions, to which the Foundation would respond. *See, e.g.*, AR 1851-61. Over more than two



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

years the Service issued approximately 100 IDRs, which were initially directed at the financial affairs of the corporation, including its assets and liabilities, income and expenses, and unrelated business taxable income. *See*, *e.g.*, AR 1857-3051. In response to these requests the Foundation produced thousands of pages of bank statements, cancelled checks, title documents, contracts, corporate and individual income tax returns and written explanations concerning its exempt and non-exempt activities, the roles of its officers and directors and other aspects of its corporate operations. *Id*. These appear as a part of the Administrative record.

The Audit culminated in the issuance by the Service of the TAM. AR 8798-8824.

In the TAM, the Service concluded that the Foundation is a publicly-supported charity, exempt from taxation as an organization described in 26 U.S.C. § 501(c)(3), but that it is not a church under 26 U.S.C. §§ 509(a)(1) and 170(b)(1)(A)(i) for the tax years under examination (1998, 1999, and 2000). The Service then concluded that the Foundation's church status should be retroactively revoked, back to January 1, 1998. AR 8880.

In particular, the Service determined that, notwithstanding the specific findings of the Tax Court in 1987 that affirmed the Foundation's status as a "church," the Foundation is not a church because:

1. The Service determined that Plaintiff no longer has the "minimum" for church status – "a body of believers or communicants that assembles regularly in order to worship." AR 8822.
2. The Service determined that Plaintiff does not have an established place of worship, and does not hold regular religious services. AR 8822.
3. The Service determined that Plaintiff did not hold more than 10 weddings or ministerial events or sacerdotal functions during the years 1998-2000. AR 8822.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

4. The Service determined that Plaintiff holds only "sporadic" lectures of "less than 30 people" held at Tall Timber Ranch, which are not sufficient to satisfy the Service's prerequisites to church status. AR 8822.

5. The Service determined that Plaintiff conducted seven seminars per year. AR 8822.

6. The Service determined that Plaintiff's principal expenditures are for broadcasting and publishing. AR 8822.

7. The Service determined that there was no evidence that, during 1998–2000, Plaintiff had an established membership not associated with any other church or denomination. AR 8823.

8. The Service determined that Plaintiff's radio ministry shows have "some religious content" and "seek to disseminate [the Foundation's] views and doctrines," but concluded that "religious programming is not sufficient to constitute a church." AR 8823.

9. The Service determined that the Foundation is "predominately a religious broadcaster" and not a church. AR 8823.

10. The Service determined that Plaintiff does not have a church building, has no regular congregation, and did not conduct regular religious services during the years in question (1998-2000). AR 8824.

**Statement of Law**

The term "church" is not defined in the Internal Revenue Code (the "Code"). Nor are the Treasury Regulations (26 C.F.R.) promulgated under Code section 170 helpful in determining what is a church. Those regulations merely provide that "[a]n organization is described in



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

section 170(b)(1)(A)(i) if it is a church or a convention or association of churches." Treas. Reg. § 1.170A-9(a).[6] It seems clear, however, that Congress intended that the word church have a more restrictive definition than the term religious organization. 88 T.C. at 1356. Although the term "church" is used a number of times in the New Testament, it is not defined in the Bible. Moreover, it is mainly a Christian term; many other religions do not use the term at all in describing their existence or function. *The Cambridge Advanced Learner's Dictionary* defines the term as "an official Christian religious organization."[7]

The Greek word "ecclesia," translated as "church," signifies generally an assembly, either common or religious, and is sometimes so translated (as in Acts 19: 32, 39). In the New Testament it usually means a congregation of religious worshippers, either Jewish (as in Acts 7:38), or Christians (as in Matthew 16:18; 1st Corinthians 6:4).[8] However, the adoption of such a restrictive application by the government for taxation or other purposes would violate the Establishment Clause of the First Amendment to the Constitution, which has been interpreted to constrain practices that prefer one religious over another, or prefer religious belief over secular thought. *Everson v. Bd. Of Educ.*, 330 U.S. 1, 18 (1947). The Supreme Court has stated that denominational neutrality is the "clearest command of the establishment clause." *Larson v. Valente*, 456 U.S. 228, 244 (1982). Accordingly, any test developed by the Service to determine church status which favors traditional Christian denominations through application of any objective or subjective criteria would appear to violate the Establishment Clause.

---

6 *See* Whelan, *"Church" in the Internal Revenue Code : The Definitional Problems,* 45 Fordham L. Rev. 885, 916-17 (1977).

7 *The Cambridge Advanced Learner's Dictionary*, "church" (http://dictionary.cambridge.org).

8 *American Tract Dictionary*, "church" (http://www.studylight.org).



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

1. *The Associational Test*

In *Church of Spiritual Technology v. United States*, 26 Cl. Ct. 713 (1992), this Court addressed an organization's status as a church in a case that involved the government's denial of the organization's initial qualification for tax exempt status.[9] The Court stated that, for an organization to qualify as tax-exempt, it must be organized and operated exclusively for tax-exempt purposes. *Id.* at 730. In addition, the Court used an "associational" test and decided that the Plaintiff was not a church for tax purposes because "it is not 'a coherent group of individuals and families that join together to accomplish a religious purposes of mutually held beliefs' which the Tax Court has identified as a defining characteristic of a church." *Id.* at 731 n. 36 (*quoting Church of Eternal Life v. Commissioner*, 86 T.C. 916, 924 (1986)). The "associational test" requires that, "at a minimum, a church includes a body of believers or communicants that assembles regularly in order to worship" and that church must be "reasonably available to the public in its conduct of worship, its educational instruction, and its promulgation of doctrine" in order to satisfy the associational role of the church. *Am. Guidance Found., Inc., v. United States*, 490 F. Supp. 304, 306 (D.C.D.C. 1980).

In 1987 the United States Tax Court considered both the Foundation's religious meetings in Oregon and its radio ministry, and found that the Foundation satisfies this associational test:

> "It possesses associational aspects that are much more than incidental. Despite the involvement of several members of Roy Master's family, [the Foundation] is more than a one family church. *Cf. Am. Guidance Found., Inc. v. United States, supra* at 307. Furthermore, [the Foundation] is not a sham organization created solely for tax purposes. *See, e.g.*, *Davis v. Comm'r*, 81 T.C. 806 (1983), aff'd. without published opinion 767 F.2d 931 (9th Cir. 1985) (Universal Life Church case). Based upon all the facts and circumstances, we conclude that [the Foundation] is a church within the meaning of section 170(b)(1)(A)(i)."

[9] The instant case is a revocation case, not an initial qualification case.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

88 T.C. at 1360. As further demonstrated herein, neither the facts nor the law considered and applied by the Tax Court in reaching its conclusion have materially changed since 1987.

2. *The Service's 14-Factor Test*

In 1978, in a speech at a continuing legal education event, then-Service Commissioner Jerome Kurtz announced 14 criteria the Service developed for application in determining whether a religious organization is a "church."[10] The Service later published these criteria in its Internal Revenue Manual*, Exempt Organizations Examinations Guidelines Handbook.* The Tax Court rejected the notion of adopting the Service's criteria as the "test" of whether an organization is a church, but did refer to them as "helpful." 88 T.C. at 1358.[11] Several other courts have either adopted the Service criteria or have relied upon them heavily in making their determinations on the issue.[12]

The Service's 14 factors are:

1. a distinct legal existence;
2. a recognized creed and form of worship;
3. a definite and distinct ecclesiastical government;
4. a formal code of doctrine and discipline;
5. a distinct religious history;

---

[10] *See* Remarks of IRS Commr. Jerome Kurtz, PLI Seventh Biennial Conference on Tax Planning (1/9/78) *reprinted in* FED Taxes (P-H) ¶ 54,820 (1978).
[11] *See also Living Faith, Inc. v. Comm'r.*, 540 F.2d 365 (7th Cir. 1991); *First Church of In Theo v. Comm'r*, T.C. Memo 1989-16.
[12] *See, e.g., Spiritual Outreach Soc'y v. Comr.*, 927 F.2d 335 (8th Cir. 1991); *Lutheran Social Serv. v. U.S.*, 758 F. 2d 1283, 1286-87 (8th Cir. 1985), *rev'g and remanding* 583 F. Supp. 1298 (D. Minn. 1984); *Williams Home, Inc. v. U.S.*, 540 F. Supp. 310, 317 (W.D. Va. 1982); *American Guidance Foundation, Inc.*, 490 F. Supp. 304; *Church of the Visible Intelligence*, 4 Cl. Ct. 55. (1983)



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

6. a membership not associated with any other church or denomination;
7. an organization of ordained ministers;
8. ordained ministers selected after completing prescribed studies;
9. a literature of its own;
10. an established place of worship;
11. regular congregations;
12. regular religious services;
13. Sunday school for religious instruction of the young; and
14. Schools for preparation of its ministers.

Plaintiff's research does not reveal that any court has stated that these 14 factors are the exclusive indicators to be applied in making a "church" determination. Indeed, the Service admits that they are not, citing a 15th factor: "any other facts and circumstances which may bear upon the organization's claim for church status."[13]

Moreover, the 14 factors may reasonably be criticized, as they tend to favor religions with which Service employees and the courts are familiar; *i.e.*, "established religions."[14] Each appears to favor Christian denominations over all others. Strict application of the 14 factors would create a tax preference for established denominational churches, compared to all other religious organizations, in contravention of the neutrality requirement of the First Amendment.[15] For example, a strict application of several of the factors, such as the requirements of exclusive

[13] Internal Revenue Manual 7(10)69, *Exempt Organizations Examination Guidelines Handbook* 321.3(3)(Apr. 5, 1982).
[14] *See* Ericka King, *Tax Exemptions and the Establishment Clause*, 49 Syracuse L. Rev. 971 (1999).
[15] *See* Reka Potgeiter Hoff, *The Financial Accountability of Churches for Federal Income Tax Purposes: Establishment or Free Exercise?*, 11 Va. Tax Rev. 71 (1991).

religious affiliation and regular religious services, would disqualify from church status religions such as Buddhism, Taoism, Confucianism, and Baha'i. The seventh factor, requiring an organization of ordained ministers, would not be satisfied by the Jehovah's Witness church, which makes no distinction between minister and congregant. The thirteenth, Sunday schools for religious instruction of the young, would not be satisfied by the Jewish faith or by the Seventh Day Adventist Church.

Nonetheless, the Tax Court in its 1987 decision applied each of the 14 factors and determined that the Foundation of Human Understanding is a church. Without admitting the validity or accuracy of the 14 factors, the Foundation states that it is a church under those factors, as demonstrated by the following.

*Factor 1: Distinct Legal Existence*

The Tax Court found that the Foundation was "a nonprofit corporation incorporated under the laws of California, [that] certainly has a distinct legal existence." 88 T.C. at 1359. There is nothing in the administrative record to indicate any subsequent change or disqualification under this factor.

*Factor 2: Recognized Creed and Form of Worship*

The Tax Court found that "[a]lthough based on Judeo-Christian principles, the emphasis on emotional self-control through a specific type of mediation as the key to salvation sets [the Foundation] apart from other recognized religions." 88 T.C. at 1359. In the Audit, and in the TAM, the Service noted no changes in the Foundation's creed or form of worship. AR 8798-851. Indeed, there have been none. Affidavit of Roy Masters, ¶ 2. *See* AR 6435.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

*Factor 3: Definite and Distinct Ecclesiastical Government*

The Tax Court found that the Foundation "lacks a definite ecclesiastical government." AR 52. Plaintiff disagrees, and cites the fact that its board of directors and ministry have directed its operations from its inception. Neither the Service nor the case law suggest any threshold level of governmental structure that would satisfy the Service's concerns in applying this factor. Indeed, many widely-recognized religions around the world have none, yet few, including the Service would argue against their status as churches. Consider, for example, the Confucian, Taoist, and Shinto faiths. Unlike other larger Christian denominations, including the Roman Catholic Church, the Foundation has no need for a Pope, cardinals, bishops, and other familiar ecclesiastical governmental structure.

*Factor 4: Formal Code of Doctrine and Discipline*

The Tax Court found that Plaintiff "lacks a formal code of doctrine and discipline." 88 T.C. at 1360. Plaintiff disagreed then, and continues to disagree. The Foundation's doctrine is set forth in Roy Masters' published writings, including *New Insights*, *Be Still and Know*, and other writings. AR 7081-85; 231; 1443-1 to 1491; 7081-85.

*Factor 5: Distinct Religious History*

The 1987 Tax Court found that Plaintiff:

> "[C]learly has a distinct, if relatively short, religious history. [The Foundation] first existed as an unincorporated association formed in 1961 as the vehicle to spread the belief of Roy Masters, its founder. The record is unclear as to when or how Roy Masters formulated his beliefs or had them revealed to him. Nonetheless, [the Foundation] had existed, at the time the Commissioner first made his final adverse determination, for more than 20 years as an association and a corporation."

88 T.C. 1359.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

Plaintiff has continued to act similarly through its ministers, and consistently with Roy Master's teachings, from 1987 to the present time. Affidavit of Roy Masters, ¶ 9. There is nothing in the Administrative Record to indicate any change in Plaintiff's distinct religious history.

*Factor 6: Membership Not Associated with any other Church or Denomination*

The Tax Court found that "[a]lthough [the Foundation] does not require its followers to reject membership in other churches, many followers consider [the Foundation] to be their only church." 88 T.C. at 1359. The Foundation is widely viewed by its congregants as being their church. *See, e.g.*, Affidavit of Roy Masters, ¶ 23, AR 10007-11169. The Administrative Record indicates no change in subsequent years. AR 233. Indeed, during the Service's Audit, hundreds of these adherents submitted declarations and petitions declaring the Foundation to be their church. AR 7078-79; AR 7355-7473; AR 8803. *See also* Affidavit of Roy Masters, ¶ 22, AR 10355-11169.

*Factor 7: Organization of Ordained Ministers; and Factor 8: Ordained Ministers Selected after Completing Prescribed Studies*

The Tax Court found:

> "Although the regular services have no set structure or liturgy, they are conducted by [the Foundation's] ordained ministers. Ministers ordained by [the Foundation] must serve a 3-year apprenticeship under the personal tutelage of Roy Masters. [The Foundation] does not maintain separate physical facilities for the preparation of its ministers."

88 T.C. at 1359. Based on these statements, the Tax Court appeared to accept Plaintiff's organization of ministers and ordination process as satisfying the seventh and eight criteria. This remains in effect to this day. AR 2619-20. Affidavit of Roy Masters, ¶ 32-33.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

The tutelage to be qualified as a minister is a personal one under Roy Masters. AR 2619-20. There is no set length of time for the tutelage and no contract pertains to it. *Id.* The Certificate of Ordination is issued to each individual minister. *Id.* It is registered with the County Clerk and each ordination is, therefore, presumptively recognized by ministers in the Josephine County, Oregon area. *Id.* Copies of the Certificates of Ordination have been provided to the government for Roy Masters, Ann Masters, David Linderman, David Masters, Elizabeth Diane Linderman, Michael Masters, and Emmanuel McLittle. *Id.*; AR 7804.

A proposed minister who is in tutelage under Roy Masters must have a comprehensive grasp of the unique doctrines of the Foundation, which may take only a few months or several years to attain. *Id.* As the founder of the Foundation, Roy Masters has developed and disseminated its unique doctrines. *Id.* Each minister must be familiar with the literature and writings of Roy Masters and be able to competently explain and expound upon those doctrines to Foundation followers and other interested members of the public. *Id.* Roy Masters must be personally satisfied that the proposed ministers' knowledge of the doctrines and ability to explain them are sufficiently complete that the ministers can adequately represent the Foundation and its teachings. *Id.* There is no fee charged for the tutelage and no set curriculum. *Id.*

The Service criticized this process because, during the tax years in issue, six out of seven of the Foundation's ordained ministers were part of the Masters family. AR 8803. However, Emmanuel McLittle was ordained in 2001 after completing the process described in the 1987 Tax Court opinion. AR 7804. Emmanuel McLittle's contributions to the Foundation's ministry have been of long duration, continuous, and substantial. AR 8083; 8131-32; 8553; *see also* AR 7760. Moreover, prior to the tax years at issue, Arlyn Hahn and Robert McQuain were also ministers of the Foundation. AR 8084.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

*Factor 9: Literature of Its Own*

Although the Tax Court did not rely on this factor in its holding, it did include an extensive factual finding as to the Foundation's books, pamphlets, and other literature. 88 T.C. at 1346-47. Copies of samples of Plaintiff's literature appear in the Administrative Record. AR 1443-1 to 1491-16; 3091-192; 6404; 7080; Affidavit of Roy Masters, ¶ 44, AR 11243-11132. *New Insights* is a high-quality, regularly-published religious newsletter containing thoughtful articles, testimonial letters and information concerning the Foundation's ministries. Affidavit of Roy Masters, ¶ 27; AR 11244-11132. *New Insights* is available to the public through postal delivery or online subscription. Affidavit of Roy Masters, ¶ 26. Many pay for postal or Web subscriptions; others, such as incarcerated prisoners, are granted complementary subscriptions. Affidavit of Roy Masters, ¶ 28. Currently the Foundation sends monthly copies to 898 monthly and yearly subscribers and complementary subscriptions to 172 subscribers. Affidavit of Roy Masters, ¶ 29. Additionally, the Foundation publishes, distributes, and sells a number of books, pamphlets, and other materials on its Web site, www.fhu.com. All but two are of the Foundation's own authorship. AR 236. No other entity is involved in the authorship, production, or dissemination of any of these religious materials. *Id.* The conclusion of the Service that the Foundation does not have its own literature is without merit.

*Factor 10: Established Places of Worship*

The Tax Court found that Plaintiff's "[w]orship takes the form of regular meetings of regular congregations at established places of worship, [the Foundation's] Los Angeles headquarters and the Grant [*sic*] Pass, Oregon, church building." 88 T.C. at 1359. In 1994 Plaintiff sold its Evelyn Street church building in Grants Pass. AR 232; 7076. Nonetheless, since 1979, prior to the Tax Court's decision, Plaintiff's headquarters and its religious services



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

have been located at Tall Timber Ranch, a 373-acre retreat owned and operated by the Foundation and located near Selma, Oregon. AR 229. The Foundation continues to conduct its meetings (services) at Tall Timber Ranch and at locations throughout the United States (AR 232; 6404) including Philadelphia, Boston, and Los Angeles. AR 6447-48. The Evelyn Street building is gone, but the seminars in other cities and regular meetings at Tall Timber Ranch have continued. AR 7072. Tall Timber Ranch is the Foundation's permanent place of worship. *Id*.

*Factor 11: Regular Congregations*

The Tax Court found that Plaintiff satisfied this factor:

> "Worship takes the form of regular meetings of regular congregations at established places of worship, [the Foundation's] Los Angeles headquarters and the Grant [*sic*] Pass, Oregon, church building . . . these services were regularly conducted by the ministry for congregations consisting of 50 to 350 persons."

88 T.C. at 1359. After Plaintiff moved its headquarters to Grants Pass, it continued to have regular meetings. AR 229, 232. Since 1979, Plaintiff's meetings continued to take place in the form of seminars at Tall Timber Ranch (AR 232, 6407; Affidavit of Roy Masters, ¶¶ 4, 5), and daily radio broadcasts attended by individuals who could not travel to Grants Pass. AR 7073. During a period including the tax years under audit by the Service (1998-2000), Roy Masters was a victim of poor health and the Foundation's Sunday meetings, while continuing to be well attended, were held less frequently. AR 7075-76. Affidavit of Roy Masters, ¶ 7. The Administrative Record states that, "[i]n 2002, FHU indicated that it intended to make its Sunday meetings more regular." AR 231-32. In fact, since Roy Master's return to relatively good health, the Foundation's services have increased in frequency and, during the years following the tax years in issue (including the years during which the audit was conducted), the Foundation's Tall



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

Timber Ranch meetings have been held weekly, on Sundays. Affidavit of Roy Masters, ¶ 8.

*Factor 12: Regular Religious Services*

The Administrative Record shows that Plaintiff has held religious services such as funerals and weddings dating back to 1961. AR 231. Affidavit of Roy Masters, ¶ 34, AR 15000-15175. Sunday services became less frequent after Plaintiff sold its Evelyn Street building in approximately 1994 and during a period in which Roy Masters suffered from poor health. AR 232; Affidavit of Roy Masters, ¶ 7. In addition to weekly meetings, services currently include individual meetings for counseling. AR 6449-53.

Although the Foundation had less frequent Sunday services at Tall Timber Ranch between 1998 and 2002, during that period it continued to hold lectures, seminars, and meetings in a variety of locations, including Boston, Philadelphia, and Los Angeles. AR 2635-37; 7959-61; 8006-08; 8128 - 30.

Plaintiff currently holds Sunday services weekly, which are open to the public, broadcast on radio and are recorded and available to be replayed at the convenience of the listener online. Affidavit of Roy Masters, ¶ 16. Between January 1 and March 31, 2008, more than 17,000 people attended the Foundation's Sunday services through listening to audio online. Affidavit of Roy Masters, ¶ 15. Similarly, the Foundation uses radio broadcasts to allow individuals to attend meetings more regularly and conveniently. AR 7073.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

*Factor 13: Sunday Schools for Religious Instruction of the Young*

The Tax Court found that "[a]lthough [the Foundation] does not separately provide for the religious instruction of the young, such as through Sunday School classes, its school includes religious instruction as part of the general education curriculum." 88 T.C. at 1359.

In the mid-1980s, the Foundation established Brighton Academy as a school for religious, moral, and secular education of its young people. AR 2621. Brighton Academy has always been open to the general public, and, since 1991, has operated independently of the Foundation. *Id.* *See also* AR 7079. Roy Masters, Brighton Academy's founder (AR 7167-68), served on Brighton's board and also chaired its steering committee so that the school's values reflected the Foundation's Judeo-Christian world view. *See* AR 7261-73. There is currently no formal relationship between the Foundation and Brighton Academy, though Foundation followers send their children to school there and children of families who are Foundation followers constitute the majority of students who attend the school. *Id.* Roy Masters continues to be a member of the Board of Directors of Brighton Academy and in that capacity participates in the selection of headmasters, teachers, and staff members. *Id.*

*Factor 14: Schools for the Preparation of Its Ministers*

This issue is addressed under the discussion of the seventh and eighth factors, above.

*"Factor" 15: Any other Facts and Circumstances*

The Tax Court noted that the Service "will consider '[a]ny other facts and circumstances which may bear upon the organization's claims for church status.'" 88 T.C. at 1358. On this factor, Plaintiff refers to its discussion at of the development of its radio and internet ministries, below.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

*Summary*

For the foregoing reasons and as determined by the Tax Court some twenty years ago, Plaintiff is a church and remains a church under the only criteria every announced by the Service and reviewed by the courts. The Administrative Record is consistent and clear on this point.

*3. The Service's New Criteria*

Undeterred in its mission to disqualify Plaintiff as a church, in its TAM the Service creates and then applies several new factors not previously announced or reviewed by any court. Plaintiff now turns to a discussion of these new factors, without agreeing in any fashion that they are appropriate, or that they may be applied to determine the issue presented in this case.

*TAM Factor 1: The Service's conclusion that the Foundation no longer has the "minimum" for church status: "a body of believers or communicants that assembles regularly in order to worship." AR 8822.*

This is not true. In addition to the regular meetings of congregants at Tall Timber Ranch during the years in issue (AR 232), throughout the years in issue and through the present time the Foundation has also conducted its radio and internet ministries. Affidavit of Roy Masters, ¶ 12. Plaintiff's congregants include: (1) the persons who assemble weekly at Tall Timber Ranch (AR 232); (2) several hundred additional persons who attend occasionally or follow the teachings of the Foundation from remote locations (Affidavit of Roy Masters, ¶ 19, AR 10355-1169); and (3) thousands of incarcerated inmates who attend by radio (Affidavit of Roy Masters, ¶ 20, AR10003-352; 13492-696). Additionally, thousands access the Foundation's message on the Foundation's Web site. Affidavit of Roy Masters, ¶ 15.

The Administrative Record is clear that thousands of persons who are cannot visit the Tall Timber Ranch in person, due to geographical location, physical limitation, incarceration, or other factors having nothing to do with willingness to congregate and worship, nonetheless



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

subscribe to the teachings of the Foundation. AR 7358-473; Affidavit of Roy Masters, ¶ 19, AR 10003-11169. The record is abundant with testimonials from those who, notwithstanding the Service's averments to the contrary, consider the Foundation to be their church, the source of their spiritual guidance. AR 7358-473; Affidavit of Roy Masters, ¶ 22, AR 10003-11169; 11349-11368. Those testimonials concern the tax years in issue, as well as time periods both prior to and since the tax years audited by the Service. *See, e.g.*, Affidavit of Roy Masters, ¶ 22, AR 10356, 10359, 10361, 10362, *et seq.* These persons are a body of believers, who "assemble" to receive the spiritual message, in the same fashion that congregants of radio, television, and internet ministries assemble around the world. *See, e.g.*, AR 7073-74; 7286-87.

In the face of this evidence there is no basis in fact for the Service's conclusion on this point.

*TAM Factor 2: The Service's conclusion that the Foundation does not have an established place of worship, and does not hold regular religious services. AR 8822.*

This is one of the Service's 14 factors. Plaintiff refers to its discussion of the tenth factor, above. For the reasons stated in that discussion, the Service's conclusion on this factor is erroneous.

Moreover, Plaintiff respectfully points out that the Service's 14 factors, including this, the tenth, were promulgated in 1978, long before religious radio ministries were well established, and long before the advent of the internet, audio and video streaming, and other methods of communication which, to the Commissioner at that time, would have seemed to be science fiction. The Foundation's argument on this point appears at AR 7073-75. Strict application of a requirement that churches be required to meet at a designated physical location on a consistent basis for services that are "regular" in the view of the Service asks churches to become frozen in



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

time. Were the Service to apply the same types of restrictions upon the courts, such modern practices as electronic filing, electronic presentation of documentary evidence, digital recording of court proceedings, and voice-over-internet ("VOIP") status conferences would be denied to the courts and parties. Neither common sense nor the law authorize the Service to impose such technological intransigence.

*TAM Factor 3: The Service's conclusion that the Foundation did not hold more than 10 weddings or ministerial events or sacerdotal functions during the years 1998-2000, and conclusion that the Foundation's activities in these areas are insufficient for church status. AR 8822.*

The Administrative Record makes clear the fact that the Foundation has, in fact, conducted hundreds of weddings and other sacerdotal events during its history. Affidavit of Roy Masters, ¶ 34, AR 15000-15175. In particular, the Foundation's ministers have conducted weddings at Tall Timber Ranch since at least 1983. AR 7078; Affidavit of Roy Masters, ¶ 35, AR 15107. Yet, there is no indication in the law or in the Service's 14 factor test indicating that a minimum number of weddings, funerals, or other ministerial functions is a prerequisite to church status. Indeed, churches perform such ceremonies as called upon to do so by their members; churches have no control over their frequency. The Service's argument and findings are a red herring, intended to facilitate a conclusion and not directed toward accurate factual and legal analysis.

*TAM Factor 4: The Service's conclusion that the Foundation holds only "sporadic" lectures of "less than 30 people" held at Tall Timber Ranch, which are not sufficient to satisfy the Service's prerequisites to "church" status. AR 8822.*

This is not accurate. Plaintiff refers to its discussion under the eleventh factor, above. Moreover, there is no holding in any legal authority dictating minimum attendance levels for satisfaction of church status. The Service believes that 30 is insufficient; query what is the



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

magic number? The Service attempts to apply a quantitative threshold somewhere above the level indicated by the Administrative Record, without specificity or justification. The term "congregation" is defined as "an assembly of persons assembly brought together for common religious worship." http://dictionary.reference.com/browse/congregation. Why is 30 an insufficient number? It is not.

*TAM Factor 5: The Service's conclusion that Foundation staff conducted seven seminars per year which, again, is apparently not sufficient in the Service's view. AR 8822.*

Similarly regarding the Service's aforementioned discussion of a minimum number of members, no minimum quantitative standard regarding seminars exists under the law. The Service's creation of, and reliance upon, this "factor" are unwarranted.

*TAM Factor 6: The Service's conclusion that the Foundation's principal expenditures are for broadcasting and publishing. AR 8822.*

The Service fails to state the relevance of its conclusion to the issue presented. The Service does not argue that Plaintiff's expenditures are unnecessary, inappropriate, exorbitant, unfair or concealed, simply that they go for broadcasting and publishing expenses. Indeed, the Foundation's practice of obtaining its radio time and satellite uplink access through the "barter" system minimizes its required expenses of broadcasting its spiritual message. AR 7571-72. Two of the methods by which the Foundation gets its religious message out to congregants are through the airwaves and in print. The messages so conveyed are no less religious, no less timely, no less spiritually relevant, and no less heard by the congregation than they would be if they were delivered in a room with a pulpit. The Service's strict application of conceptual limitations that, while they might have made sense more than 30 years ago, have been outpaced by common and daily dealings in simple technology, has no application in the determination of these issues for the tax years in question, or at the present time.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

In addition to its regular Sunday meetings, during the tax years at issue, Plaintiff produced its "Advice Line" radio show, and broadcasted it on approximately 80 stations. AR 8548-52. Currently Advice Line is heard on over 130 stations, domestically and abroad. Affidavit of Roy Masters, ¶ 16. Listeners can call in to speak with Roy Masters, personally, to obtain counseling and spiritual and personal guidance. The program airs live from 9 p.m. to 11 p.m., and is also recorded so that listeners may listen to, or download, the program online. Between January 1 and March 31, 2008, more than 69,000 visitors listened to the Advice Line program online. Affidavit of Roy Masters, ¶ 17.

The Service argues that broadcasting has nothing to do with religion (AR 8822); the Foundation's followers disagree. For example, incarcerated inmates, unable to attend in person, attend Plaintiff's religious services by tuning in to regular radio broadcasts. Affidavit of Roy Masters, ¶ 20, AR 10001-10352. Even non-prisoners benefit from the Foundation's radio broadcast, as Plaintiff "makes every effort to take church to its congregation." AR 7073-74. Indeed, this practice of bringing church to members through radio and the Internet is becoming common among many religions. AR 7286-88.

In 2003 the *Wall Street Journal* reported that followers of religious faiths were using technology to help them observe their religious rites. Elizabeth Berstein, *More Prayer, Less Hassle*, Wall St. J., June 27, 2003, at W1. AR 7286-88. Orthodox Jews programmed their lights to turn on and off during the Sabbath in order to enjoy lighting but also comply with Sabbath requirements. The Catholic Church felt compelled to release guidelines warning, but not condemning, online confession. These developments reflect the fact that Americans practice their religious traditions in ways that were impossible in the 1970s. That trend has even continued to the Internet. The *Los Angeles Times* reports that "Religion on the internet is

nothing new – churches have been using e-mail and bulletin board services for more than a decade, and sacred texts have long been accessible via online databases." David Sarno, *Can You Believe GodTube.com?*, Oct. 21, 2007, *available at* http://www.latimes.com/entertainment/news/newmedia/la-ca-webscout21oct21,0,660332.story?coll=la-home-entertainment.

Following that movement, churches have attempted to reach more followers by packaging and distributing their "brands." The South Florida Flamingo Road Church ("FRC") exemplifies this trend by setting a goal of "fifty churches worldwide, 100,000 members and a $150 million-a-year budget." Alexandra Alter, *Inspired by Starbucks*, Wall St. J., June 13, 2008, at W1. To facilitate the church's growth, FRC uses closed circuit television and satellite feeds to send their message to its satellite churches across the country and in South America as well.

FRC is not alone in utilizing technology to reach out to the masses. *Outreach Magazine*, a journal for Evangelical Christian churches, noted in its yearly "Most Innovative Churches" article that "in our first annual report on innovative churches, we called podcasts and blogging innovative. In less than a year, the times have changed dramatically." Tony Morgan, *2008 America's Most Innovative Churches*, *Outreach Magazine*, Jan. 2008, *available at* http://www.outreachmagazine.com/library/features/jf08ftrmostinnovativechurches.asp. One trend the magazine noted is that churches are starting online campuses. These churches offer instant messaging for prayer requests as well as video feeds over the Internet for their services. Living Hope Church, in Vancouver, Washington, serves as an example. That church maintains its own online church with a specific pastor for that campus. The campus can be accessed at http://www.livinghopechurch.com/group/lhc_internet.

*Outreach Magazine* and *Christianity Today* provide a number of articles discussing how churches can use the internet. *Outreach Magazine* reports that "websites have become as



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

integral to a church's presence in the community as a building sign or yellow pages description." David Tascherne, *Caught in the Web?*, *Outreach Magazine*, Summer 2002, *available at* http://www.outreachmagazine.com/library/features/02summerftrweb.asp. *Christianity Today* uses its Web site to call its readers to use technology to become culturally relevant. http://blog.christianitytoday.com/outofur/archives/2006/05/spencer_burke_o_1.html ("[Historically], it made sense for people to travel miles to hear someone talk about God. After all, people were mostly illiterate, Bibles were expensive, and Sunday morning was often the only time people could expand their horizons . . . That's no longer true today. Teaching is available everywhere—on television, radio, online.").

In *Exploring Religious Community Online*, Professor Heidi Campbell[16] discusses religious communities that have been using internet technology in their ministries. Churches use "the internet as a spiritual space" that follow "traditional forms of religion from the thousands of religious websites." Heidi Campbell, *Exploring Religious Community Online* 54 (Peter Lang Publishing 2005) (internal citations omitted). Participation in religion through the Internet has created a "spiritual network, where the primary motivations for internet use are spiritual or religious practices." *Id.*

*TAM Factor 7: The Service conclusion that there was no evidence that, during 1998–2000, Plaintiff had an established membership not associated with any other church or denomination. AR 8823.*

None is required. The Tax Court reviewed this factor in its 1987 opinion and found that, notwithstanding this fact, the Foundation is a church. 88 T.C. at 1360.

---

[16] Heidi Campbell is an Assistant Professor of Communication at Texas A&M University. Professor Campbell has published multiple books describing religious community, including *Exploring Religious Community Online* and *Religion Online: Finding Faith in the* Internet (Routledge Publishing 2004). Professor Campbell is also a Scholar Grant Recipient from the Southwest Commission on Religious Studies.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

*TAM Factor 8: The Service's conclusion that although the radio ministry shows produced by the Foundation have "some religious content" and "seek to disseminate the Foundation's views and doctrines," "religious programming is not sufficient to constitute a church." AR 8823.*

The Foundation does not argue that its religious programming is its claim to church status. The Administrative Record is clear that the mission, operations, functions, and purpose of the Foundation have remained substantially unchanged since the date of the Tax Court's decision in 1987. This includes in-person meetings and other, traditional, sacerdotal functions. Indeed, the only change consistently complained of by the Service is that the Foundation sold its property on Evelyn Street in Grants Pass, a traditional "church building,", while simultaneously using technological and market improvements in the radio industry to increase access to its ministry for those remotely located or otherwise unable to attend services. Yet the Foundation's services have been held since 1979 at Tall Timber Ranch. Affidavit of Roy Masters, ¶4. The Service's conclusions are not supported by the administrative record and do not accurately state the Foundation's position.

*TAM Factor 9: The Service's conclusion that the Foundation is "predominately a religious broadcaster" and not a church. AR 8823.*

Citing *De La Salle Institute v. United States*, 195 F. Supp. 891 (D.C.N.D. Cal. 1961), the Service argues that Plaintiff seeks to have a church "tail" wag a religious broadcasting "dog." The Foundation is by no means unique among churches in its electronic dissemination of its religious message. *De La Salle* is an unrelated business taxable income ("UBTI") case in which a California district court reviewed the tax status of one of the largest brandy distilleries in the country, which was related to a religious order by ownership. The instant situation has nothing to do with UBTI, which by definition arises from the conduct of a trade or business activity not



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

substantially related to the performance of an organization's exempt purpose or function. 26 U.S.C. § 513; Treas. Regs. § 1.513-1(a), (d)(1).

In this case the Foundation's religious ministry, not its financial needs, are served by the use of modern technology in disseminating its religious message. The *De LaSalle* case's facts and holding are inapposite to the issues in this case. The Tax Court cited that case in dictum, and not for the proposition asserted by the Service herein. Citing *De LaSalle*, the Tax Court said: "***despite the breadth of [the Foundation's] broadcasting and publishing efforts, its associational aspects are much more than incidental." 88 T.C. at 1360-61. No tail wags any dog in this case.

As is demonstrated above, the Foundation is able to reach thousands of congregants around the world primarily because it has the capability of broadcasting on more than 130 stations. The fact that the Foundation's services are conducted in a fashion where the minister speaks into a microphone that is heard on speakers at home or in prison, in addition to speakers attached to a pulpit in a room, has nothing at all to do with the message conveyed by the church and received by the listeners.

The fallacies in the Service's argument are demonstrated by looking at it from the opposite viewpoint. The Service argues that, by utilizing radio and the Internet to broadcast its religious message to thousands conveniently, cheaply and immediately, the Foundation is less a church than it would be if it confined its ministry to dozens or a few hundred attending in a single location, in person, as it has in the past. The Service's position is that ministry to a few is a church, but ministry to many is not. One may reasonably question the basis for this remarkable position, and how it serves any purpose but governmental restriction upon religious activity. The Foundation is a church because of the nature of its ministry, as recognized by the Tax Court and,



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

until recently, the Service. It is a religious broadcaster because it uses broadcasting to more widely disseminate its religious ministry. There is no rule or logic that dictates that one excludes the other; they facilitate each other and are entirely consistent with the tax exempt purposes for which the Foundation was organized and for which it operates.

## CONCLUSION

The Foundation of Human Understanding is a church. The Tax Court confirmed this fact. The Service has recognized it as a church since 1988. AR 1859-1860. Nothing of substance or relevance concerning the church, its mission, ministry, or message has changed in a way that impairs its status as a church or justifies the revocation of its church status. In drawing its conclusions in the TAM the Service would deny the march of time, advances in technology and the views and beliefs of congregants world wide who have acknowledged the Foundation as their church.

Unlike the organizations that are the topics of most of the case law on this issue, the Foundation is a public ministry, recognized by thousands in several countries; it is not the typical "family church" or tax-avoidance device to which church status is typically denied by the courts. The teachings of the Foundation are based upon the teachings of Jesus Christ, as communicated by its founder, Roy Masters. This is not a cult; it provides no tax avoidance purpose to its founders, management or members.

While the Foundation denies that the Service's 14 factors are at all determinative of the efficacy, accuracy, truth, or value of the ministry of any organization, the evidence in this case demonstrates that the Foundation satisfies those 14 factors, just as it did in 1987 before the Tax Court.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

Unsatisfied with this truth, the Service in its TAM concluded that the Foundation is not a church, based upon several new criteria which have neither been announced by the Service nor reviewed by the courts. The Service cites neither law nor principled reasons in support of its action. The Foundation respectfully submits that there are none.

WHEREFORE, Plaintiff requests that its Motion for Summary Judgment be granted.

DATED this 9th day of September, 2008.

Respectfully submitted,

SCHWABE, WILLIAMSON & WYATT, P.C.

By: /s Marc K. Sellers
Marc K. Sellers, OSB #79107
(503) 222-9981
Fax (503) 796-2900



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

# CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of September, 2008, I electronically filed the foregoing PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, with the clerk of the court using the CM/ECF system which will send notification of such filing to following party:

W.C. Rapp
william.c.rapp2@usdoj.go

s/ Marc K. Sellers
Marc K. Sellers